No. 26-2317

# In The United States Court of Appeals for the Ninth Circuit

FORD MOTOR COMPANY,

*Plaintiff-Appellant,*

v.

STEVE B. MIKHOV, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Central District of California
No. 2:25-CV-04550
Hon. Michelle Williams Court, District Judge

**Brief of *Amicus Curiae* Uber Technologies, Inc.
in Support of Plaintiff-Appellant and Reversal**

Joshua Patashnik
  *Counsel of Record*
ASHURST PERKINS COIE US LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130
Telephone: +1.858.720.5767
Joshua.Patashnik@ashurstperkins.com

Michael R. Huston
ASHURST PERKINS COIE US LLP
2525 East Camelback Rd., Suite 500
Phoenix, AZ 85016
Telephone: +1.202.434.1630
Michael.Huston@ashurstperkins.com

David W.T. Daniels
ASHURST PERKINS COIE US LLP
700 13th St. NW, Suite 800
Washington, DC 20005
Telephone: +1.202.654.6364
David.Daniels@ashurstperkins.com

*Counsel for Amicus Curiae Uber Technologies, Inc.*

TABLE OF CONTENTS

**Page**

Identity and Interest of Amicus Curiae..................................................1

Introduction and Summary of Argument ................................................3

Argument.................................................................................................3

I.    The *Noerr-Pennington* doctrine does not protect a defendant against allegations of manufacturing false evidence in violation of federal mail and wire fraud statutes...........................3

    A.    The manufacture of false evidence is not protected petitioning activity .............................................................5

    B.    Manufacturing false evidence unambiguously violates the RICO and mail and wire fraud statutes........................10

    C.    Manufacturing false evidence falls within the sham exception to the *Noerr-Pennington* doctrine........................13

Conclusion .............................................................................................19

Certificate of Compliance......................................................................21

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
690 F.2d 1240 (9th Cir. 1982)........................................................... 17

*Columbia Pictures, Indus., Inc. v. Prof'l Real Est. Inv'rs, Inc.*,
944 F.2d 1525 (9th Cir. 1991)........................................................... 17

*Experian Information Solutions Inc. v. Stein Saks, PLLC*,
2024 WL 5261159 (C.D. Cal. Nov. 19, 2024)................................ 18, 19

*Freeman v. Lasky, Haas & Cohler*,
410 F.3d 1180 (9th Cir. 2005)..................................................... 4, 5, 7

*Kearney v. Foley & Lardner, LLP*,
590 F.3d 638 (9th Cir. 2009)....................................................... passim

*Kottle v. Nw. Kidney Ctrs.*,
146 F.3d 1056 (9th Cir. 1998)............................................ 5, 13, 14, 15

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*,
431 F.3d 353 (9th Cir. 2005)....................................................... passim

*Moore v. Saniefar*,
2016 WL 2764768 (E.D. Cal. May 12, 2016) ............................... 14, 17

*Natural Immunogenics Corp. v. Newport Trial Group*,
2016 WL 11520711 (C.D. Cal. Aug. 1, 2016)..................................... 18

*Netflix, Inc. v. Blockbuster, Inc.*,
2006 WL 2458717 (N.D. Cal. Aug. 22, 2006)..................................... 17

*Perez v. DirecTV Grp. Holdings, LLC*,
2019 WL 6362471 (C.D. Cal. July 23, 2019) ..................................... 17

# TABLE OF AUTHORITIES (continued)

**Page**

*Professional Real Est. Inv'rs, Inc. v. Columbia Pictures Indus, Inc.*,
508 U.S. 49 (1993)................................................................13

*Pyankovska v. Abid*,
65 F.4th 1067 (9th Cir. 2023) .............................. 4, 6, 7, 10

*Relevant Grp., LLC v. Nourmand*,
116 F.4th 917 (9th Cir. 2024) ...........................................4

*Sonus Networks, Inc. v. Inventergy, Inc.*,
2015 WL 4539814 (N.D. Cal. July 27, 2015)....................17

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006)..................................... passim

*Uber Techs., Inc. v. Downtown LA Law Grp.*,
No. 2:25-cv-06612 (C.D. Cal.), Dkt. No. 134......................2

*Uber Techs. Inc. v. Simon & Simon P.C.*,
Civ. No. 25-5365, 2026 WL 1284178
(E.D. Pa. May 11, 2026) ....................................................2

*United States v. Alvarez*,
567 U.S. 709 (2012)........................................................5, 6

*United States v. Dunnigan*,
507 U.S. 87 (1993)..............................................................5

*United States v. Marbella*,
73 F.3d 1508 (9th Cir. 1996)............................................11

*United States v. Meredith*,
685 F.3d 814 (9th Cir. 2012)..............................................6

*United States v. Stevens*,
559 U.S. 460 (2010)......................................................6, 10

# TABLE OF AUTHORITIES (continued)

**Page**

*United States v. Sullivan,*
    522 F.3d 967 (9th Cir. 2008) ............................................................. 11

*Venetian Casino Resort, LLC v. NLRB,*
    484 F.3d 601 (D.C. Cir. 2007) ............................................................ 8

*Va. State Bd. of Pharmacy v. Va. Citizens Cons. Council,*
    *Inc.,*
    425 U.S. 748 (1976) ............................................................................ 5

**STATUTES**

18 U.S.C.
    § 1961(1) ............................................................................................ 11
    § 2515 ................................................................................................. 7

Cal. Penal Code § 115(a) .......................................................................... 9

**RULES**

ABA Model Rule 3.4, cmt. 1 .................................................................... 9

California Rules of Professional Conduct
    Rule 3.4(c) ........................................................................................... 9
    Rule 3.4(g) ........................................................................................... 9

Federal Rule of Appellate Procedure 29(a)(4)(E) ................................... 7

## IDENTITY AND INTEREST OF AMICUS CURIAE

*Amicus curiae* Uber Technologies, Inc. ("Uber") is a technology company that uses proprietary software to develop and maintain multi-sided digital marketplaces.[1] On one side of the marketplace, businesses and individuals use Uber's platforms to connect with users and obtain payment-processing services. On the other side, users connect with and obtain various services from those businesses and individuals, such as rides, restaurants, healthcare services, and retail products. One of the most well-known of these digital marketplaces is the Uber Rides platform.

Uber has a strong interest in this case because it is a frequent target of litigation fraud, including within the Ninth Circuit. Unscrupulous attorneys and doctors have colluded to manufacture false medical evidence that is then used to support fraudulent personal injury lawsuits, seeking massive sums in damagess, brought against Uber by plaintiffs who were uninjured or who suffered only minor injuries. Uber has filed RICO actions against these fraudsters, and the defendants in those cases have sought to immunize their fraud under the *Noerr-Pennington* doctrine. Multiple district courts, including Judge Garnett in the Central

---

[1] All parties have consented to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amicus states that no party's counsel authored this brief in whole or in part; that no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and that no person other than amicus, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

- 1 -

District of California, have rejected that argument in denying the defendants' motions to dismiss RICO claims. *See Uber Techs. Inc. v. Simon & Simon P.C.*, Civ. No. 25-5365, 2026 WL 1284178 (E.D. Pa. May 11, 2026); *Uber Techs., Inc. v. Downtown LA Law Grp.*, No. 2:25-cv-06612 (C.D. Cal.), Dkt. No. 134 (sealed order denying motion to dismiss in relevant part).[2]

The factual allegations in Uber's cases differ in important ways from the factual allegations here. Further, the decisions in *Simon & Simon* and *Downtown LA Law Group* each properly held that the district court's reasoning in this case did not preclude claims arising from those fraud schemes. *Simon & Simon*, 2026 WL 1284178, at \*12-14; *Downtown LA Law Grp.*, Dkt. No. 134 at 50-51. Nevertheless, and because the issue is a recurring one, Uber respectfully submits that it is important for this Court to remove any potential cloud of doubt created by the district court here as to whether First Amendment principles protect wrongdoers who engage in the fraudulent manufacture of evidence. They plainly do not. The Court should not adopt an interpretation of *Noerr-Pennington* that would make it more difficult for victims of litigation fraud perpetrated through the manufacture of false evidence—such as the fraudulent medical and billing records that unscrupulous doctors and lawyers have

---

[2] The district court sealed its order because it references sealed filings. The court directed the parties to meet and confer regarding potential redactions to the order before the order becomes publicly available. Uber will submit a copy of the order to this Court once it is publicly available.

weaponized against Uber—to recover for this blatantly illegal and unethical attorney misconduct.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Despite this Court's clear precedents to the contrary, the district court in this case held that the intentional manufacture of false evidence used to obtain unwarranted monetary awards from civil litigation defendants is immunized by the First Amendment so long as the evidence at issue goes only to damages and not to liability. That is not and has never been the law. Fraud and perjury are unprotected by the First Amendment, and for good reason. This Court accordingly has long recognized that a civil RICO claim seeking to recover against a racketeering enterprise that weaponizes litigation through the manufacture of false evidence is cognizable, and that the *Noerr-Pennington* doctrine is no defense. The Court should reaffirm that precedent here.

## ARGUMENT

**I.    The *Noerr-Pennington* doctrine does not protect a defendant against allegations of manufacturing false evidence in violation of federal mail and wire fraud statutes**

The First Amendment right to petition does not foreclose civil RICO liability based on fraudulent conduct simply because that conduct allegedly took place during litigation. *Noerr-Pennington* immunity only applies if (1) "the lawsuit imposes a burden on petitioning rights," (2) "the alleged activities constitute protected petitioning activity," and (3) "the

statutes at issue may be construed to preclude that burden on the protected petitioning activity." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009). A party asserting the defense must prevail "at each step" in order to obtain immunity. *Pyankovska v. Abid*, 65 F.4th 1067, 1077 (9th Cir. 2023).

This Court has identified other important limitations on the scope of *Noerr-Pennington* immunity. First, because the doctrine grows out of the Petition Clause, "its reach extends only so far as necessary" to prevent a statute from "violating the First Amendment." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005). And second, "neither the Petition Clause nor the *Noerr-Pennington* doctrine protects sham petitions, and statutes need not be construed to permit them." *Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 928 (9th Cir. 2024). Under that so-called "sham exception," litigation conduct is unprotected in any of three circumstances: (1) "where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful"; (2) "where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose"; and (3) "if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Sosa v. DIRECTV, Inc.*,

-4-

437 F.3d 923, 938 (9th Cir. 2006) (cleaned up) (citing *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998)).

In light of those principles, which are well-established in this Court's precedent, there are at least three reasons why *Noerr-Pennington* does not bar a lawsuit alleging civil RICO claims based on manufacturing false evidence in violation of federal mail and wire fraud statutes. *First*, the manufacture of false evidence is not protected petitioning activity. *Second*, the mail and wire fraud predicate acts under RICO cannot reasonably be construed to exclude the manufacture of false evidence. *Third*, the manufacture and intentional submission of false evidence in any event shows that a proceeding is a sham litigation because it necessarily deprives that proceeding of its legitimacy. *See Freeman*, 410 F.3d at 1184; *Kearney*, 590 F.3d at 644.

## A. The manufacture of false evidence is not protected petitioning activity

"Where false claims are made to effect a fraud … it is well established that the Government may restrict speech without affronting the First Amendment." *United States v. Alvarez*, 567 U.S. 709, 724 (2012) (citing *Va. State Bd. of Pharmacy v. Va. Citizens Cons. Council, Inc.*, 425 U.S. 748, 771 (1976)). "[T]he constitutionality of perjury statutes," for example, "is unquestioned." *United States v. Dunnigan*, 507 U.S. 87, 97 (1993). That is because perjury constitutes a fraud on the court that "undermines the function and province of the law and threatens the integrity

of judgments that are the basis of the legal system." *Alvarez*, 567 U.S. at 720–21. Fraud in the form of manufacturing false documentary evidence threatens the integrity of the legal system no less than perjury—the manufacture of false testimonial evidence. The First Amendment therefore protects the former no more than the latter.

This Court and the Supreme Court have long recognized that fraud is among the "limited categories of 'unprotected' speech." *United States v. Meredith*, 685 F.3d 814, 819 (9th Cir. 2012) (quoting *United States v. Stevens*, 559 U.S. 460, 468 (2010)). *Pyankovska* illustrates this principle. In that case, the defendant illegally wiretapped his ex-wife in order to obtain evidence to use against her in a child custody proceeding in state court. 65 F.4th at 1071. The ex-wife sued under the Federal Wiretap Act, alleging that the defendant had "filed selectively edited transcripts of the illegally recorded conversations on the court's public docket." *Id.* at 1072. The district court granted the ex-husband's motion to dismiss based on *Noerr-Pennington*, but this Court reversed, explaining that "filing illegally obtained evidence on a public court docket is conduct not immunized under *Noerr-Pennington*." *Id.* at 1071.

In *Pyankovska*, the *Noerr-Pennington* defense faced "insurmountable hurdles under step one" of the analysis because a "damages action in federal court" for illegal conduct does not "impose[] an unconstitutional 'burden' on the state court litigation." 65 F.4th at 1077. That is because a party in a judicial proceeding must "play by the rules applicable to all

-6-

litigants," including the federal statutory provision prohibiting a party from introducing in any court the contents of unlawfully intercepted communications. *Id.* (citing 18 U.S.C. § 2515). Having to follow rules of that kind does not impermissibly burden petitioning rights.

What's more, the *manufacture* of false evidence—as distinct from its submission to a court—is not even petitioning activity to which the right to petition attaches. *Noerr-Pennington* immunity "applies only to what may fairly be described as *petitions*, not to litigation conduct generally." *Freeman*, 410 F.3d at 1184 (emphasis in original). Submitting false evidence to the court to request some relief, which likely constitutes direct petitioning activity, is distinct from manufacturing that false evidence, which does not. It is true that in "giv[ing] adequate 'breathing space' to the right to petition," this Court has extended *Noerr-Pennington* protection to "conduct incidental to the prosecution of the suit" instead of just "petitions sent directly to the court." *Sosa*, 437 F.3d at 932, 934. But that "breathing space" principle cannot be stretched so far as to cover fraudulent manufacturing of false evidence.

*Sosa* applied *Noerr-Pennington* to routine pre-litigation demand letters that had been issued in clear contemplation of imminent litigation. *Id.* at 925–27. The court reasoned that the demand letters were protected because they are so closely associated with the initiation of a lawsuit: "[T]he formal filing of litigation with an invitation to engage in negotiations to settle legal claims is a common, if not universal, feature

of modern litigation." *Id.* at 936. And, the court noted, such communications are protected by the litigation privilege in California and other states. *Id. Sosa*'s holding was therefore "limited to a narrow category of 'incidental' activity," namely the commonplace "prelitigation communications demanding settlement." *Venetian Casino Resort, LLC v. NLRB*, 484 F.3d 601, 613 (D.C. Cir. 2007).

*Sosa* says nothing about manufacturing false evidence, which is certainly not a "common … feature of modern litigation." 437 F.3d at 936. Nor does *Sosa*'s reasoning for establishing the "breathing space" principle extend to the manufacture of false evidence. The court sought to protect a productive pre-litigation practice that "permits parties to frame their legal positions, often streamlining any subsequent litigation, and thereby reducing legal costs and facilitating access to the courts." *Id. Sosa* expressed the concern that, were demand letters unprotected by the First Amendment, it would "render the entire litigation process more onerous" by dissuading settlement and encouraging parties to file lawsuits without first attempting to resolve the dispute informally. *Id.* Manufacturing false evidence, by contrast, serves no public policy interest worth protecting, and in fact is a societal ill that operates only to prolong the litigation of frivolous claims.

The *Sosa* court also recognized that demand letters merit protection because they are "intimately related to … petitioning activities" and can be "essential to the fruitful exercise of the right to petition." *Id.* at 934,

939. That cannot be said of the manufacture of evidence. Attorneys are the stewards of their clients' evidence; they find and marshal that evidence, but do not create it. *See* Cal. R. Prof. Conduct 3.4(g) (forbidding attorneys from "assert[ing] personal knowledge of facts in issue"); *see also* ABA Model Rule 3.4, cmt. 1 (explaining that Rule 3.4 is designed to ensure that "evidence in a case is to be marshalled competitively by the contending parties" in a way that ensures "[f]air competition in the adversary system"). An attorney's manufacture of false evidence is squarely prohibited—it cannot be said to be "essential" to the litigation process in the same way as pre-suit demand letters. Indeed, the manufacture of evidence is more than non-essential to the efficient administration of justice; it corrupts and forestalls justice.

Finally, the *Sosa* court concluded that the breathing space principle should cover demand letters because the "ability to lawfully prosecute even unsuccessful suits adds legitimacy to the court system," an interest which is "equally served when disputes are resolved" pre-litigation. 437 F.3d at 936–37. The manufacture of false evidence plainly does not "add[] legitimacy to the court system." *See id.* at 936. That is why the rules of professional conduct prohibit attorneys from "falsify[ing] evidence," Cal. R. Prof. Conduct 3.4(c), and state criminal codes prohibit anyone from "knowingly procur[ing] or offer[ing] any false or forged instrument to be filed." Cal. Penal Code § 115(a). That kind of conduct cannot plausibly be protected petitioning activity under *Noerr-Pennington*.

### B. Manufacturing false evidence unambiguously violates the RICO and mail and wire fraud statutes

Because *Noerr-Pennington* is ultimately "a rule of statutory construction," *Pyankovska*, 65 F.4th at 1076, it can apply only if "the statutes at issue may be construed to preclude that burden on the protected petitioning activity," *Kearney*, 590 F.3d at 644. If the statutes may not be so construed, then the First Amendment provides a defense only if the conduct at issue is actually protected—which, again, fraud is not, *see Stevens*, 559 U.S. at 468. The mail and wire fraud statutes that are civil RICO predicate acts cannot be construed to avoid a constitutional question where the RICO violation is premised on allegations of manufacturing false evidence.

This Court's decision in *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005), makes clear that the manufacture of false evidence squarely violates the federal mail and wire fraud statutes. There, the plaintiff brought a civil RICO action premised on mail and wire fraud violations, on the theory that the defendant "fraudulently induced the settlement of their prior products liability litigation" by "fraudulently withh[olding] evidence" that its fungicide product was contaminated. *Id.* at 356, 358. This Court held that these allegations sufficed to state a civil RICO claim, rejecting the defendant's argument that claim was based on "immune litigation conduct." *Id.* at 364. "Plaintiffs allege that DuPont's RICO liability is predicated on its

falsification, destruction, and misrepresentation of evidence," and the Court found no authority to support the proposition that such allegations "cannot form the basis of a subsequent federal civil RICO claim" premised on violations of the mail and wire fraud statutes. *Id.*[3]

A straightforward textual analysis confirms that *Living Designs* was correct in reaching that conclusion. Violations of the mail and wire fraud statutes are explicitly defined as RICO predicate offenses. 18 U.S.C. § 1961(1) (citing, inter alia, *id.* § 1341 (mail fraud) and § 1343 (wire fraud)). There is no question that the mail and wire fraud statutes apply even in the context of litigation. Those statutes cover any "scheme or artifice to defraud," *id.* §§ 1341, 1343, perpetrated by mail or wire and with intent to defraud, *United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008). Schemes to defraud can and do occur in the litigation context. For example, in *United States v. Marbella*, 73 F.3d 1508 (9th Cir. 1996), this Court affirmed a mail fraud conviction premised on the manufacture of "falsified medical records" for use in threatening personal-injury litigation. *Id.* at 1510.

*Sosa* is not to the contrary. The Court there held that the mail and wire fraud statutes could be construed to "avoid[] the serious constitu-

---

[3] Although *Living Designs* "did not explicitly discuss the *Noerr–Pennington* doctrine," this Court has recognized that it nonetheless implicitly rejected the application of the doctrine, and establishes that the fraudulent litigation conduct at issue "could amount to mail fraud, notwithstanding its connection to a legal proceeding." *Sosa*, 437 F.3d at 940.

tional question of Petition Clause immunity" because they "do not unambiguously reach demands to settle reasonably based legal claims." 437 F.3d at 939, 940. But the Court emphasized that its conclusion was tied to the *specific* allegedly fraudulent statements at issue in *Sosa*—namely, (1) "misrepresentations of the law," *id.* at 940, and (2) a "false threat to sue within 14 days," *id.* at 941. The former could not serve as RICO predicates because "[i]t is well established … that misrepresentations of the law are not actionable as fraud, including under the mail and wire fraud statutes." *Id.* at 940. And the latter could not serve as a RICO predicate because the plaintiff "utterly fail[ed] to show" how the false threat to sue within 14 days "proximately caused him any injury." *Id.* at 941.

*Sosa* did not involve the manufacture of false or fraudulent evidence, and does not remotely suggest that allegations of such conduct would not violate the mail and wire fraud statutes. On the contrary, *Sosa* acknowledged—and did not dispute—the Court's conclusion in *Living Designs* that "fraudulent discovery conduct in prior litigation" could violate the mail and wire fraud statutes and thereby serve as RICO predicate acts. 437 F.3d at 940 (citing *Living Designs*, 431 F.3d at 365). It merely declined to apply that holding in a case that did not involve such conduct. But where a civil RICO plaintiff *does* plausibly allege such conduct, *Noerr-Pennington* provides no immunity.

### C. Manufacturing false evidence falls within the sham exception to the *Noerr-Pennington* doctrine

Even if the manufacture of false evidence were protected as direct or incidental petitioning activity (though it is not), and even if the mail and wire fraud statutes could plausibly be read to not reach that conduct (though they cannot), the *Noerr-Pennington* doctrine still would not apply because such conduct "fall[s] within the 'sham' exception" to the doctrine. *Kottle*, 146 F.3d at 1060.

The sham exception to *Noerr-Pennington* developed "to prevent the immunization of conduct that used 'governmental process … as an anti-competitive weapon.'" *Kearney*, 590 F.3d at 644 (quoting *Kottle*, 146 F.3d at 1060). The *Noerr-Pennington* doctrine was never intended as a blanket protection for fraud effectuated through litigation. Even where the three prongs of *Noerr-Pennington* are satisfied (protected petitioning activity, a burden thereon, and the unavailability of a saving construction), a plaintiff may still bring suit if he shows that the alleged petitioning conduct is a "mere sham to cover" an attempt to impermissibly harm another party, rather than an "objectively plausible effort to enforce rights" through lawful means. *Professional Real Est. Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 51, 65 (1993); *see also Sosa*, 437 F.3d at 940 (the sham litigation exception covers conduct "done for the prohibited purpose of injuring [another's] business or property interests").

-13-

As relevant here, the sham litigation exception applies where a party "mak[es] intentional misrepresentations to the court" which "deprive the litigation of its legitimacy." *Kottle*, 146 F.3d at 1060 (cleaned up); *see Kearney*, 590 F.3d at 646.[4] Fraudulent litigation conduct meets that test if the misrepresentations "would be material to th[e] court's analysis" of the litigation claims at issue and the party making the misrepresentations had "knowledge of [their] falsity." *Moore v. Saniefar*, 2016 WL 2764768, at *7, *9 (E.D. Cal. May 12, 2016). Manufacturing and submitting false evidence fit within the sham exception because such conduct deprives the litigation of its legitimacy. *See Kottle*, 146 F.3d at 1060.

The district court's conclusion below that the allegedly fraudulent attorney's fee petitions did not deprive the litigation of legitimacy (1-ER-17-20) contradicts this Court's decisions in *Kottle*, *Living Designs*, and *Sosa*.

In *Living Designs*, this Court rejected a claim of litigation immunity because the defendant's alleged "RICO liability [was] predicated on its falsification, destruction, and misrepresentation of evidence." 431 F.3d at

---

[4] The sham exception also applies where (1) a lawsuit is "objectively baseless" and reflects "a concealed attempt to interfere with the plaintiff's business relationships," and (2) a "series of lawsuits" are "brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *Kottle*, 146 F.3d at 1060 (cleaned up). These two applications of the sham exception, which originated in the antitrust context, *see id.*, are less directly relevant than the "intentional misrepresentations to the court" branch of the sham exception in a scenario involving fraudulent litigation conduct.

-14-

364. As *Sosa* later explained, the "conduct alleged" in *Living Designs*—*i.e.*, the falsification and misrepresentation of evidence—"quite clearly fell within the third prong of *Kottle*'s sham litigation exception, in that it amounted to a 'knowing fraud upon … the court depriv[ing] the litigation of its legitimacy.'" *Sosa*, 437 F.3d at 940 (quoting *Kottle*, 146 F.3d at 1060, and citing *Living Designs*, 431 F.3d at 364-65).

That holding removes any doubt that the manufacture of false evidence and submission of that fabricated evidence to the court falls within the sham exception to *Noerr-Pennington*. If falsifying and misrepresenting evidence for use in a legal proceeding "deprive[s] the litigation of its legitimacy," *Sosa*, 437 F.3d at 940, the same must surely be true of manufacturing false evidence. This indistinguishable conduct likewise falls within *Kottle*'s sham litigation exception to *Noerr-Pennington*.

This Court's decision in *Kearney* further confirms that fraudulent litigation or discovery conduct falls within the sham exception. There, a landowner filed a civil RICO suit against a law firm that had represented a school district in eminent domain proceedings against her. 590 F.3d at 641. She alleged that the law firm concealed the results of an environmental percolation test that would have significantly increased the value of her land in the eminent domain proceeding. *Id.* at 646–47. The alleged predicate acts included that the law firm "suppressed the percolation test results, instructed CTE's engineers not to prepare a formal report of those results, and repeatedly misrepresented during trial that [the school

-15-

district] had not conducted percolation testing." *Id*. The conduct also involved false "discovery communications, interactions with expert witnesses and contractors, and statements to the court by [the school district's] agents pursuant to those proceedings." *Id*. at 645.

This Court held that the scheme fit into the sham litigation exception because the complaint "alleged intentional misrepresentations to the court, and fraud upon the court through the suppression of evidence, that ultimately led to her property being valued lower than it should have been." *Id*. at 646–47. The Court went on to note that even if the plaintiff "could have done more to discover the test results, the sufficiency of Kearney's efforts is a question of fact not properly dealt with at the pleading stage, and does nothing to negate allegations of Defendants' misrepresentations to the court and jury on the central issue in the litigation." *Id*. at 648.

Just as "Kearney's allegations are very similar to those described by the *Sosa* court in *Living Designs*" and thus "fall within the third prong of the sham litigation exception," *Kearney*, 590 F.3d at 647, so too does manufacturing and submitting false evidence. That conduct is also designed to mislead the court and the parties and undermine the legitimacy of the proceedings.

The district court here also failed to heed this Court's guidance that the sham exception is rarely if ever suitable for resolution at the pleading stage. The question of whether otherwise protected petitioning activity

"is a genuine effort to influence governmental action, or a mere sham, is a question of fact." *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1253 (9th Cir. 1982); *see also, e.g., Columbia Pictures, Indus., Inc. v. Prof'l Real Est. Inv'rs, Inc.*, 944 F.2d 1525, 1531 (9th Cir. 1991) (collecting cases holding that "the applicability of the sham exception is a question of fact"), *aff'd*, 508 U.S. 49 (1993). "Courts thus 'rarely award *Noerr-Pennington* immunity at the motion to dismiss stage,' because well-pleaded allegations of sham litigation must be accepted as true." *Perez v. DirecTV Grp. Holdings, LLC*, 2019 WL 6362471, at *8 (C.D. Cal. July 23, 2019) (quoting *Sonus Networks, Inc. v. Inventergy, Inc.*, 2015 WL 4539814, at *2 (N.D. Cal. July 27, 2015)); *Netflix, Inc. v. Blockbuster, Inc.*, 2006 WL 2458717, at *8 (N.D. Cal. Aug. 22, 2006) (rejecting *Noerr-Pennington* defense at pleading stage because if the plaintiff's "allegations … are proven," it could "demonstrate the requisite abuse of process to succeed on a sham-litigation claim").

District courts in this Circuit have repeatedly applied *Kearney* in rejecting *Noerr-Pennington* challenges to civil RICO suits alleging intentional, fraudulent statements:

- In *Moore*, the court found that the sham exception applied because the plaintiff knowingly "lied to the court regarding his disability," which was material to his ADA claim. 2016 WL 2764768, at *8; *see also id.* at *9 (sustaining RICO counterclaim against plaintiff's brother and attorney, who "directed

his employees to make misrepresentations to the court in the filing of more than 250 ADA lawsuits" on the plaintiff's behalf).

- In *Natural Immunogenics Corp. v. Newport Trial Group*, 2016 WL 11520711 (C.D. Cal. Aug. 1, 2016), a supplements manufacturer filed a civil RICO claim against a law firm, alleging that a prior consumer class action was fraudulent because the firm had bribed the lead plaintiff, who had never purchased the product. *Id.* at *1. Judge Selna denied a motion to dismiss on *Noerr-Pennington* grounds, finding that the lawsuit alleged that the firm made intentional misrepresentations in pleadings and "filed these fraudulent lawsuits with the improper purpose to extract out-of-court settlement from the corporate defendants in these lawsuits." *Id.* at *5.

- In *Experian Information Solutions Inc. v. Stein Saks, PLLC*, 2024 WL 5261159 (C.D. Cal. Nov. 19, 2024), the court considered a civil RICO complaint against law firms accused of manufacturing fraudulent Fair Credit Reporting Act lawsuits. *Id.* at *1. The underlying predicate acts involved fabrication of evidence of credit denials in order to circumvent standing requirements in FCRA lawsuits against Experian. *Id.* at *5. The Court found that Experian had adequately pleaded all three versions of the sham exception, because they "knowingly and

-18-

intentionally caused" misrepresentations to be made in at least one case "in order to fraudulently induce Experian to pay money to settle the case." *Id.*

As these cases illustrate, courts routinely invoke the sham exception to allow for lawsuits—particularly civil RICO suits—premised on fraudulent litigation conduct that taints proceedings. Such conduct includes the manufacture and submission of false evidence in an effort to prompt a party to settle on less favorable terms than it would have absent the fraud. At the motion-to-dismiss stage, these allegations satisfy the sham exception and thus defeat any *Noerr-Pennington* defense. *See Kearney*, 590 F.3d at 647.

## CONCLUSION

The judgment of the district court should be reversed and the case should be remanded for further proceedings.

August 10, 2026

Respectfully submitted,

*/s/ Joshua Patashnik*
Joshua Patashnik
  *Counsel of Record*
ASHURST PERKINS COIE US LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130
Telephone: +1.858.720.5767
joshua.patashnik@ashurstperkins.com

Michael R. Huston
ASHURST PERKINS COIE US LLP
2525 East Camelback Rd., Suite 500
Phoenix, AZ 85016
Telephone: +1.202.434.1630
Michael.Huston@ashurstperkins.com

David W.T. Daniels
ASHURST PERKINS COIE US LLP
700 13th St. NW, Suite 800
Washington, DC 20005
Telephone: +1.202.654.6364
David.Daniels@ashurstperkins.com

*Counsel for* Amicus Curiae *Uber Technologies, Inc.*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume requirement of Federal Rule of Appellate Procedure 29(a)(5) and Circuit Rule 32(a) because it contains 4,494 words as determined by the word count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type styles requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

3.     This brief complies with Federal Rules of Appellate Procedure 29(a)(2) and 29(a)(4)(E) because all parties have consented to the filing of this brief and no counsel for any party authored this brief in whole or in part and no entity or person, aside from *amicus curiae* or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

*/s/ Joshua Patashnik*
Joshua Patashnik

-21-